H. Fuellhart, now for use of A. V. D. Waterson, admin-
istrator of H. T. Kanaka Estate, *v.* W. H. Thompson,
J. R. Timmons and A. R. Blood, with notice to Clara
S. Blood, widow, devisee and executrix of A. R. Blood,
deceased. Appeal of James N. Craft.

*Liens—Lien of a verdict, not indefinite—Judgment.*
The law does not give to a verdict a lien of indefinite duration and limit
the lien of a judgment on that verdict to five years. A proper construc-
tion of the Act of March 23, 1877, P. L. 34, forbids that the lien of a ver-
dict shall continue longer than the lien of a judgment.

Argued May 17, 1899. Appeal, No. 113, April T., 1899, by
James N. Craft, from decree of C. P. Warren Co., Sept. T., 1898,
No. 4, awarding fund in court. Before RICE, P. J., BEAVER,
ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ.
Affirmed. Opinion by RICE, P. J.

Exceptions to auditor's report. Before LINDSEY, P. J.
It appears from the record that the fund in controversy real-
ized under a sale of real estate, was claimed by James N. Craft,
as assignee, on a verdict entered October 9, 1891, upon which
judgment had never been entered, and also by A. V. D. Water-
son on a judgment entered in 1898. The auditor awarded the
fund amounting to $613.80 to the Waterson judgment. Excep-
tions were filed to the auditor's report which were dismissed
in the following opinion by LINDSEY, P. J.:

Arthur R. Blood was the owner of lot No. 103 situate in
the borough of Warren, county of Warren and state of Penn-
sylvania, on August 27, 1891, containing about one third of an
acre of land.
February 6 an action of assumpsit was commenced to No. 41,
March term, 1891, in the court of common pleas of Warren
county, by J. A. Waterhouse against said A. R. Blood, and on
October 9, 1891, a jury rendered a verdict in favor of said
J. A. Waterhouse in the sum of $520.50.
A motion for a new trial was made on behalf of the defend-

ant, a rule to show cause granted by the court, and after argument, was discharged by the court December 10, 1891.

No judgment was ever entered on the verdict, but the amount of the verdict was duly entered upon the judgment docket by the prothonotary as directed by the act of March 23, 1877. September 23, 1898, the death of A. R. Blood and the appointment of C. S. Blood as his executrix were suggested of record, and by an instrument in writing dated September 3, 1898, J. A. Waterhouse assigned to James N. Craft, his heirs and assigns, the above mentioned verdict with interest and costs.

December 1, 1891, H. Fuellhart obtained judgment against W. H. Thompson, J. R. Timmons and A. R. Blood to No. 344, September term, 1891, in the sum of $600, real debt, which was assigned by the plaintiff December 15, 1892, to A. V. D. Waterson, administrators of H. T. Kanaka, deceased. January 11, 1898, a fieri facias was issued on this judgment to No. 27, March term, 1898, with notice to Clara S. Blood, widow, devisee, and executrix of A. R. Blood, deceased, upon which writ the sheriff made return that he had levied upon said lot No. 103, situate in said borough of Warren on said date; and on the same day a writ of scire facias was issued on this judgment to No. 31, March term, 1898, to revive and continue its lien with notice to Clara S. Blood, widow, devisee and executrix of A. R. Blood, deceased.

On March 15, 1898, judgment was obtained in this case in favor of the plaintiff and against Clara S. Blood, widow, devisee and executrix as aforesaid, and W. H. Thompson, for $600 and costs; and on June 24, 1898, a venditioni exponas was issued to No. 4, September term, 1898, by virtue of which the said lot No. 103 situate in Warren borough, was sold and the money which it brought is the fund distributed by the report of the auditor now under consideration.

The question for our determination is whether the fund belongs to the plaintiff in the above entitled execution, or whether it belongs to James N. Craft, assignee of the plaintiff in No. 41, March term, 1891, by virtue of the verdict of the jury duly entered in the judgment docket of Warren county, October 9, 1891.

To determine this question we must ascertain the true intent and meaning of the act of March 23, 1877.

It was earnestly and ably contended by counsel for James N. Craft that the lien created by this act, in case judgment is not entered on the verdict, continues indefinitely. Is this true? Is this the correct interpretation of the act?

These questions can be best answered by ascertaining the cause or reason for the passage of the act and the evil which the legislature intended to remedy. Fortunately there is no controversy between counsel on this subject. The reasons which led the legislature to pass this act are so clearly set forth in the preamble that there is no chance for any difference of opinion. Keeping in mind then the purpose which the legislature had in view, namely, to create a lien for the amount of the verdict rendered by the jury against the real estate of the defendant, during the pendency of motions for new trials and arrest of judgments, or, in other words, during the interim between the rendition of the verdict and the entry of judgment thereon, let us endeavor to find out if we can when the lien should terminate, if at all, in case no judgment is entered on the verdict.

This act was passed to remedy what the legislature evidently regarded a defect in our laws relating to the recovery, entry and lien of judgments, so that the party who is compelled to bring his action in the courts to obtain what is due him, should not after going through the expense and annoyance of a trial be deprived of the fruits of the trial.

The act provides that the amount of the verdict shall be entered in the judgment docket. It therefore partakes of the nature of a judgment lien, and we think the law limiting the lien of a judgment to five years should be applied to the lien of the verdict of a jury.

Statutes which are not inconsistent with one another, and which relate to the same subject-matter, are in pari materia and should be construed together and effect given to them all, although they contain no reference to one another and were passed at different times: 23 Am. & Eng. Ency. of Law, 311.

We cannot think the legislature intended to create a new and independent lien, differing from the lien of a judgment, which should continue indefinitely. Such a construction would do violence to the plainly expressed purpose of the act as contained in the preamble, which was to provide a lien for the

time between the recovery of the verdict and the entry of judgment thereon.

The learned auditor has shown that originally the lien of judgments continued indefinitely, and that the legislature has by acts of assembly limited their lien to five years. In the face of this legislation we cannot think the legislature intended the lien of a verdict to continue indefinitely.

The act provides that "it shall be the duty of the prothonotary of the court of common pleas to enter such verdict on the lien docket where judgments are entered, marking the same 'verdict,' and specifying the amount of said verdict and the date of its rendition." It would therefore seem that the legislature were careful to classify the lien and place it with judgment liens. Why then should not this statute be construed with the other statutes relating to judgment liens?

In the case of Neeld's Road, 1 Pa. 353, it was held that the act of April 16, 1838, providing for the laying out of private roads "under the surface of any land" to coal mines should be construed "as if it were a section in the general road laws." It therefore seems quite clear that this act creating a lien which the legislature has directed to be entered on the judgment lien docket, should be regarded as adding a lien in the nature of a judgment lien to supply a defect in existing statutes and the practice, and the statute limiting judgment liens to five years should apply to it. It was contended by counsel for James N. Craft, that the words "which lien shall remain" appearing in the 1st section of the act, expressly makes the lien of the verdict a continuous one, without entry of judgment.

We agree with the learned auditor as to the meaning of these words, namely, that in case a new trial or arrest of judgment is denied, the lien of the verdict shall continue until by the practice of the courts judgment can be entered on the verdict, so that there shall be no interim, by means of which the creditor might lose his security. This we think was the intention of the legislature. But regarding the act as belonging to the system relating to judgment liens, we think it should be construed with them, and in case judgment is not entered the lien expires in five years. Again, the argument from the above quoted words loses its force when we apply the well-settled rule referred to in Commonwealth v. Fraim, 16 Pa. 163: "Statutes

are to be construed so as may best effectuate the intention of the makers, which sometimes may be collected from the cause or occasion of passing the statute, and, when discovered, it ought to be followed with judgment and discretion in the construction, though that construction may seem contrary to the letter of the statute.    It is said a thing within the letter of the statute is not within the statute unless it be within the intention of the makers."

This rule is referred to again in Big Black Creek Improvement Co. v. Com., 94 Pa. 455, opinion by Justice TRUNKEY.

In construing a statute if the sense be doubtful such construction should, if possible, be given as will not conflict with the general principles of laws, which it may be presumed the legislature would not " intend to disregard or change : " Manuel v. Manuel, 13 Ohio, 458.

The tendency of legislation in the commonwealth for a century having been to limit the duration of the lien of judgments, it cannot be presumed that the legislature intended to create a lien in the nature of a judgment lien that should continue indefinitely.

Several statutes relating to the same subject will be so interpreted, if possible, as to secure harmony in their application and perpetuate the general purpose of the legislation : Wortham v. Basket, 99 N. Car. 70.

And now, December 26, 1898, for the reasons given above, the exceptions to the learned auditor's report are all overruled and the report is confirmed and distribution decreed in accordance therewith.

*Errors assigned* among others were (11) in awarding the fund in court to Waterson, administrator of the Kanaka estate. (12) In not holding that the verdict in favor of the plaintiff in the case of J. A. Waterhouse v. A. R. Blood at No. 41, March term, 1891, was the first lien upon the real estate sold and upon the fund in court for distribution ; and in not awarding said fund to J. N. Craft the purchaser in whom the rights of said J. A. Waterhouse under said verdict had become vested by the assignment to him.

*E. H. Breshlin* and *D. I. Ball*, for appellant.—Two things are obvious from an examination of the act of March 23, 1877,

and its title, namely, that the act creates a new lien, the lien of a verdict, and that while the commencement of the lien is fixed by the act of assembly of the date of the rendition of the verdict, the time for the termination of the lien is not fixed therein.

The problem then before the court is to ascertain the duration of the lien of a verdict created by the act of March 23, 1877. If the duration of the lien of the verdict be unlimited until judgment be entered or payment or presumption of payment arises, then the appellant, James N. Craft, is entitled to the money in court for distribution. If the lien of the verdict be limited to five years, then the lien upon the fund of the verdict under which appellant claims, was lost.

Again, if the learned court were right in its contention, that the lien of the verdict is for five years only, then it further fails in the analogy to a judgment in that its lien would be for five years against the defendant, purchasers from him, and other judgment creditors, and would not continue indefinitely against the defendant, his widow, heirs and devisees. At this very point, the reasoning of the learned court breaks down wherein it holds that the lien of the verdict is analogous to that of a judgment, continues for only five years, whereas the lien of a judgment continues as against the defendant, his widow, heirs and devisees indefinitely.

*D. A. Arird*, with him *C. M. Shawkey*, for appellee.

OPINION BY RICE, P. J., July 28, 1899:

In Cowden v. Brady, 8 S. & R. 505, decided more then seventy-five years ago, Chief Justice GIBSON said that the whole policy of our state, both of the courts and the legislature, had been adverse to secret or stale liens. Speaking of the proposition that under the Act of March 20, 1799, 3 Sm. L. 358, the lien of a testatum fi. fa. was of indefinite duration he said: " It would be an odd construction that should impute to the legislature a design to give an effect to an execution which they refuse to tolerate with respect to a judgment. It would be a strange inconsistency in them to say, the direct lien of a judgment, which is matter of record in the county where the lands lie, shall be of no avail after five years, unless the plaintiff gives additional notice

within that time, by reasserting his claim before the court; and yet, that an execution, which is a mere accessory or consequence of a judgment, shall indirectly produce an indefinite lien, which is conceded to be secret in its nature, and not to be discovered except by an examination of the execution docket of every county in the state." So it may be said here, it would be a strange inconsistency for the legislature to give to a verdict a lien of indefinite duration and limit the lien of a judgment on that verdict to five years. The suggestion that either party may regulate the duration of the lien of the verdict by having judgment entered is no answer. Neither party may see fit to do so. The consequences would be that purchasers and subsequent creditors must search for the liens of verdicts for an indefinite period, if the appellant's construction of the act of 1877 be correct. The mischief that would arise from such construction would be greater than the one intended to be remedied, as the learned auditor well says. Moreover, this suggestion of counsel implies that the lien of the verdict terminates when the lien of the judgment is at an end—a proper concession, but one which weakens his plea for rigid adherence to the strict letter of the law; for it imports something into the act, which is not expressed totidem verbis, as plainly as does the construction contended for by the appellee. Manifestly the act needs construction, and having regard to the mischief to be remedied, the class to which the lien of a verdict is assigned as indicated by the requirement that it shall be placed in the judgment index, the policy of the law with regard to that class of liens, and the mischievous consequences that would ensue from holding that it is of indefinite duration, we think the true construction forbids that it shall continue longer than would the lien of a judgment. It has been said that the law does not recognize the possibility, when due diligence has been used, that the plaintiff can fail to obtain a judgment of revival within the period of five years : Meason's Estate, 4 W. 341. It can be said with equal truth that a plaintiff who has obtained a verdict, and uses due diligence, cannot fail to have judgment entered within five years if he is entitled to it. Notwithstanding the very learned and able argument of the appellant's counsel we think the right conclusion was reached in the court below, by the proper application of well settled rules for arriving at the intention of the legislature.

We cannot profitably add anything further to what is contained in the auditor's report and the opinion of the learned president of the court below.

The decree is affirmed and the appeal dismissed at the costs of the appellant.